# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:13-cv-01220-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |

Plaintiff Patricia Garcia ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 8.)

Plaintiff applied for Social Security benefits due to impairments stemming from issues with her shoulder, fingers, wrist, and left knee Hepatitis C, coagulopathy, hypertension, depression, and anxiety.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /

/ / /

/ / /

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on October 29, 2009. (AR 127.) Plaintiff's application was denied on February 4, 2010. (AR 66.) Plaintiff requested reconsideration of the denial on February 10, 2010. (AR 75.) Plaintiff's application was denied after reconsideration on July 13, 2010. (AR 83.) On July 27, 2010, Plaintiff requested a hearing. (AR 92.)

On August 9, 2011, a hearing took place before Administrative Law Judge Thomas J. Gaye ("the ALJ"). (AR 21.) On August 24, 2011, the ALJ issued a written decision and found that Plaintiff was not disabled. (AR 5-16.) The Appeals Council denied Plaintiff's request for review on June 10, 2013. (AR. 1.)

## A.  Hearing Testimony

Plaintiff was born on September 19, 1956. (AR 26.) Plaintiff is unmarried and has no children. (AR 27.) At the time of the hearing, Plaintiff was staying with a friend and receiving assistance from her sister and people from her church. (AR 27.)

Plaintiff went to Bakersfield College off and on for a year, but did not receive a degree or any type of certification. (AR 28.) In 2001, Plaintiff went through vocational rehabilitation and received training on how to use a computer. (AR 28.)

Plaintiff worked for a courier for two months until she hurt her knee. (AR 30.) Plaintiff cannot work because of her knee issues as well as "reflex sympathy dystrophy" in her left hand, her fingers will not bend, she cannot reach high with her arms, has pain, and cannot use one hand. (AR 30-31.)

Plaintiff attends church activities and does favors for other church members, such as driving to the beauty shop and helping an older couple because the husband is blind. (AR 31.) Plaintiff usually eats microwaved TV dinners. (AR 32.) Plaintiff's roommate does most of the chores around the house. (AR 32.) Plaintiff washes her own laundry. (AR 32.)

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 10.)

2

1   Plaintiff testified that she cannot use her left hand at all.  (AR 33.)  Plaintiff drives with
2 one hand and can only drive for about an hour because her right hand is developing carpal
3 tunnel.  (AR 33.)  Plaintiff has problems getting dressed, tying her shoes, opening jars, etc.  (AR
4 34.)  Plaintiff needs help eating food that requires utensils in both hands, such as cutting meat.
5 (AR 34.)

6   Plaintiff had three arthroscopic surgeries in her left knee.  (AR 34.)  Plaintiff's doctor told
7 her that the last option is a knee replacement, but recommended that she wait longer until she
8 considers it because "sometimes they don't work real good."  (AR 35.)  Plaintiff's upper leg
9 sometimes hurts bad, causing her to fall.  (AR 35.)  Plaintiff wears a knee brace when her knee is
10 hurting or when she is exercising.  (AR 35.)

11   Plaintiff also wears a brace on her left hand.  (AR 35.)  Plaintiff has not been able to use
12 her left hand since she hurt herself in November 2004.  (AR 35.)  Plaintiff takes pain medication,
13 but it makes her itch or makes her groggy.  (AR 36.)  Plaintiff's injury has remained about the
14 same in the past seven years.  (AR 36-37.)

15   Plaintiff worked at a bottling company in 1999 and 2000.  (AR 38.)  Plaintiff supervised
16 12-14 people and oversaw production.  (AR 38.)  Plaintiff had to learn everyone's job, ran a case
17 packer, labeler, filler machine, palletizer, operated a forklift, inspected bottles, etc.  (AR 38.)

18   Plaintiff saw a psychologist for depression 10-12 times in the same year as the hearing.
19 (AR 38-39.)  Plaintiff took Trazodone and Elavil for depression, but stopped because it gave her
20 bad dreams.  (AR 39.)

21   **B.    VE Testimony**
22   Linda Ferra ("the VE") testified as a vocational expert at the hearing.  (AR 37.)  The ALJ
23 gave the following limitations as the first hypothetical presented to the VE:
24 - Same age, education, and past work experience as Plaintiff;
25 - Only occasional pushing and pulling left arm controls;
26 - No climbing ropes, ladders or scaffolding;
27 - Only occasional going up and down stairs, kneeling, crouching, crawling;
28 - Only occasional reaching on the left side in all directions;

1      • No concentrated exposure to hazards such as unprotected heights, or dangerous
2          machinery;
3      • Only occasional fine and gross manipulation with the left hand; and
4      • Right-handed

(AR 39-40.)  The VE testified that a person with such hypothetical limitations could still perform Plaintiff's past work as an "outsider deliver," and "bottling supervisor."  (AR 40.)

Plaintiff's attorney asked the VE if a person could perform any jobs if they were unable to use their left upper extremity at all, even for a helping hand.  (AR 40.)  The VE testified that such a person could not work.  (AR 40.)

### C. Medical Records

The administrative record includes the following medical records: records from Clinica Sierra Vista (AR 199-232), records from Dr. P.R. Chandrasekaran, M.D. (AR 233-237), records from Pacific Orthopedic Medical Group (AR 238-280), a January 13, 2010 comprehensive internal medicine evaluation from Dr. Emanuel Dozier, M.D. (AR 281-285), records from Kern Medical Center (AR 286-348), a January 28, 2010 Physical Residual Functional Capacity Assessment from Dr. K. Quint M.D. (AR 349-353), a January 28, 2010 Case Analysis from R. Goodstein (AR 354-355), a March 28, 2010 psychological evaluation from Dr. Greg Hirokawa Ph.D (AR 356-361), records from the Spine and Orthopedic Center (AR 362-428, 600-683), records from Dr. Mark T. Montgomery, M.D. (AR 429-455), a June 10, 2010 Physical Residual Functional Capacity Assessment from Dr. A. Khong, M.D. (AR 456-461), a June 10, 2010 Case Analysis from Dr. A Khong, M.D. (AR 462-467), a July 9, 2010 Psychiatric Review Technique from Dr. R. Torigoe, Ph.D. (AR 468-481), a July 9, 2010 Mental Residual Functional Capacity Assessment from Dr. R. Torigoe, Ph.D (AR 482-485), records from Dr. John M. Larsen, M.D. (AR 486-550), and records from Kern Medical Center (AR 551-599).

### D. The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law in his August 24, 2011 decision:

/ / /

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2006;
- Plaintiff has the following severe impairments: left shoulder subacromial bursitis and AC joint arthralgia, tenosynovitis of the right middle finger status-post trigger release and tenosynovectomy, right carpal tunnel syndrome, history of fractured left wrist distal radius complicated by reflex dystrophy, chronic left upper extremity (LUE) regional pain syndrome, hepatitis C infection with encephalopathy, coagulopathy and portal hypertension, left knee recurrent meniscal tear post surgeries, depression and anxiety;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to perform light work, except pushing and pulling with the left upper extremity.  Plaintiff cannot perform more than occasional use of stairs or ramps and can never work on ladders, ropes, or scaffolds.  Plaintiff must avoid concentrated exposure to hazards and cannot perform more than occasional fine and gross manipulation with the bilateral upper extremities;
- Plaintiff is capable of performing past relevant work as an outside deliverer and bottling supervisor; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from August 24, 2004, through the date of the ALJ's decision.

(AR 10-16.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

1  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
2  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
3  (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a
4  reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v.
5  Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a
6  whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill,
7  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
8  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
9  Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
10  ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
11  conclusion that must be upheld.")

### III.

### DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by adopting Dr. Dozier's findings while rejecting Dr. Montgomery's findings pertaining to Plaintiff's limitations related to her left arm.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("...generally a treating physician's opinion carries the most weight of the various types of physician testimony.")  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)).  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Id. (citing Pitzer, 908 F.2d at 506).  "[T]he opinion of an examining doctor, even if contradicted by

another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Dr. Emanuel Dozier authored a comprehensive internal medicine evaluation dated January 13, 2010. Dr. Dozier appears to be a non-treating, examining physician. Dr. Dozier observed that "[t]he extremities have no clubbing, cyanosis or deformity. There is no evidence of atrophy, effusions, or crepitance noted." (AR 283.) Range of motion tests indicated less range of motion in the left shoulder, elbow and wrist compared to Plaintiff's right side. (AR 284.) Dr. Dozier noted 4/5 motor strength for the grip and upper extremity strength on the left side, and 5/5 motor strength for the grip and upper extremity strength on the right. (AR 284.) Dr. Dozier concluded that Plaintiff could lift and carry 20 pounds, and only occasionally reach, handle, feel and finger with the left side. (AR 285.)

Dr. K. Quint, M.D. authored a Physical Residual Functional Capacity Assessment dated January 28, 2010. (AR 349-353.) Dr. Quint also authored a Case Analysis. (AR 345-355.) Dr. Quint appears to be a non-treating, non-examining physician. Dr. Quint opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, only occasionally push and pull with her left upper extremity, can frequently grip or grasp with the left upper extremity, and only occasionally reach with her left upper extremity. (AR 350-51.)

On March 11, 2010, Dr. Mark. T. Montgomery, M.D. authored a supplemental Agreed Medical Evaluation for Plaintiff. (AR 430.) Dr. Montgomery appears to be a non-treating, examining physician. Dr. Montgomery opined that Plaintiff "is not able to use the left hand for personal hygiene such as brushing her teeth, combing her hair, bathing, defecating, urinating or eating. She is not able to use the left hand for 'non specialized hand activities' such as grasping, lifting, and tactile discrimination." (AR 430.) On February 5, 2010, Dr. Montgomery wrote that Plaintiff "requires prophylactic work restrictions consisting of no use of the left upper extremity." (AR 436.)

On June 10, 2010, Dr. A. Khong, M.D. authored a Physical Residual Functional Capacity Assessment. (AR 456.) Dr. Khong appears to be a non-treating, non-examining physician. Dr.

Khong opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, could not frequently push or pull with the left upper extremity, could not frequently reach above shoulder level with the left upper extremity, and could only occasionally handle or finger with the left upper extremity. (AR 457-58.)

The ALJ afforded less weight to Dr. Montgomery's opinion because they seemed "to be based on the claimant's subjective complaints and not her physical examination or clinical findings." (AR 15.) Since Dr. Montgomery's opinions are contradicted by other doctors in the record, Dr. Montgomery's opinions can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

The ALJ noted that Dr. Montgomery's opinions appeared inconsistent with his clinical findings, which were relatively normal. The ALJ concluded that the clinical findings would be consistent with some limitation in the use of Plaintiff's left arm, but not consistent with the conclusion that Plaintiff is completely unable to use her left arm, wrist and hand. The internal inconsistencies between the conclusions and the clinical findings in Dr. Montgomery's report constitutes a specific and legitimate reason to reject Dr. Montgomery's opinion and adopt the opinion of another examining physician.

Based upon the foregoing, the Court finds that the ALJ did not err in his analysis of the medical evidence and his conclusions regarding the limitations stemming from Plaintiff's left upper extremity.

///
///
///
///
///
///
///
///
///

# IV.

# CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ's analysis was proper and the ALJ's conclusions were supported by substantial evidence. Accordingly, it is HEREBY ORDERED that Plaintiff's appeal from the administrative decision of the Commissioner is DENIED and JUDGMENT is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Patricia Garcia. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 17, 2014**

UNITED STATES MAGISTRATE JUDGE